IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

FERNANDO TORRES-NEGRÓN,

Plaintiff

v.                                                    CIVIL 02-1728 (HL)

ANTONIO L. RIVERA, et al.,

Defendants

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.  INTRODUCTION

There are several motions pending before the court in this copyright infringement action.  On September 19, 2003, co-defendants Sony Discos, Inc. (hereinafter "Sony") and J & N Records (hereinafter "J & N") filed a motion for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(c) and 9(g).  (Docket No. 110.)  A response in opposition to such motion was filed by plaintiff Fernando Torres Negrón (hereinafter "Torres") on December 1, 2003 (Docket No. 145) to which Sony and J & N replied on December 22, 2003.  (Docket No. 158.)  Also before the court is Torres' motion to exclude J & N's designation of expert witness (Docket No. 122, Oct. 7, 2003) and J & N's opposition to said motion.  (Docket No. 146, Nov. 10, 2003.)

CIVIL 02-1728 (HL)                    2

Subsequently, on March 24, 2004, co-defendant EMI Latin, an unincorporated division of Capitol Records, Inc., (hereinafter "EMI Latin"), filed a motion for summary judgment.  (Docket No. 182.)  Torres' opposition to said motion was filed on May 10, 2004.  (Docket No. 215.)  EMI Latin's reply to the opposition (Docket No. 245) and Torres' surreply (Docket No. 259) are also before the court.  Co-defendant CDT Records d/b/a Casa de los Tapes (hereinafter "CDT Records") has similarly moved for summary judgment.  (Docket No. 199, Mar. 29, 2004.)  Torres' opposition, CDT Records' reply to the opposition, and Torres' surreply appear in the record on Docket Nos. 216, 255 and 259 respectively.  Finally, the court is also considering Sony and J & N's motion for summary judgment filed on March 29, 2004.  (Docket No. 202.)  A response in opposition to said motion was filed by Torres on March 14, 2004.  (Docket No. 231.)  The reply to the opposition was submitted by Sony and J & N on June 7, 2004 (Docket No. 253) and Torres' surreply was filed a month later, on July 7, 2004.  (Docket No. 264.)

These matters were all referred to me for a report and recommendation on July 16, 2004.  (Docket No. 267.)  Having considered the arguments of the parties, the evidence in the record, and for the reasons discussed below, it is my recommendation that Sony and J & N's motion to dismiss be GRANTED in part and DENIED in part.  I also recommend that Torres' motion to exclude J & N's expert be DENIED.  The motions for summary judgment filed by co-defendants EMI Latin, CDT Records and Sony and J & N should all be GRANTED in part and DENIED in part.

CIVIL 02-1728 (HL)                         3

## II.  BACKGROUND

A.  <u>Factual Background</u>

The facts are taken from Torres' amended complaint (Docket No. 81) and recited in the light most favorable to the plaintiff.  I include the factual allegations that are relevant to the discussion of the matters currently before the court.  They may or may not be in controversy for purposes of summary judgment.

Torres brings the present action for copyright infringement under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 <u>et seq.</u>  He also seeks relief under Puerto Rico law for infringement of his moral rights and for co-defendants' unjust enrichment.  The amended complaint alleges that Torres is an artist, author and composer.  He is the author of the three musical compositions at issue in this case:  "Triste Final," "Noche de Fiesta" and "Bebo por Ti," which allegedly contain wholly original material and are copyrightable under the laws of the United States.  He is also member of the American Society of Composers, Authors & Publishers (hereinafter "ASCAP"), membership number 1537061.  The titles  "Noche de Fiesta" and "Bebo por Ti" have been registered in the ASCAP since February 4, 1994.  "Triste Final," has been registered at ASCAP since May 17, 1994.  Torres claims to be the sole proprietor of all rights, titles, interests and copyrights of the mentioned musical compositions.

On January 31, 2002, the United States Copyright Office issued to Torres a Certificate of Registration No. PAU 2-624-261 for the musical compositions "Triste Final,"

CIVIL 02-1728 (HL)                    4

"Noche de Fiesta" and "Bebo por Ti."  On February 14, 2002, Torres filed his application for registration of these songs at the Puerto Rico Intellectual Property Registry.

    The principal allegation in the amended complaint is that Torres recently learned that the "defendants directly, vicariously, jointly and/or contributorily [sic], unlawfully and willfully, performed, reproduced, recorded, copied, published and distributed or otherwise unfairly used" the compositions created by Torres.  (Amended Complaint, Docket No. 81, at 9, ¶ 3.6.)  They did so, according to the amended complaint, without requesting or receiving a license; without paying royalties to Torres; and without Torres' authorization. (Id.)  Such actions allegedly continue.

    Specifically, the amended complaint alleges with respect to the composition "Triste Final," that co-defendant CDT Records and others, unlawfully, willfully, and illegally copied, adapted, produced, recorded, performed, published, and distributed said musical composition in the phonorecord titled "Manuel y el Trío Borinquen."  CDT Records did not request or obtain a license to do so.  Additionally, no royalties were paid to Torres for such use.

    Co-defendant Sony, along with others, is also alleged to have unlawfully and illegally copied, published, distributed or otherwise use the composition "Triste Final" in a phonorecord titled "Que Siga el Party" of the group "Los Sabrosos del Merengue."  Sony allegedly used and distributed Torres' composition without obtaining a license and without paying royalties to plaintiff.

CIVIL 02-1728 (HL)                    5

As to the song "Noche de Fiesta," the allegations in the amended complaint assert that co-defendants J & N, along with others, unlawfully, willfully, and illegally copied, adapted, produced, recorded, performed, published, and distributed said song in track No. 2 of the phonorecord titled "Bailando y Gozando con ... Gozadera."  Once again, the allegation is that they did so without a license, without authorization and without paying royalties to plaintiff.  Co-defendant J & N and others are also alleged to have infringed Torres' copyrights over the composition "Noche de Fiesta" in the same phonorecord titled "Bailando y Gozando con ... Gozadera" when they recorded, published and distributed the song as a remix in track No. 9 of said phonorecord.  Additionally, co-defendants J & N and EMI Latin allegedly infringed Torres' rights to the musical composition "Noche de Fiesta" when they recorded and released the same in the phonorecord titled "Merenhits '94."  J & N and Sony are further charged with copyright violations for the re-release of "Merenhits '94."

With respect to the musical composition "Bebo por Ti," Torres avers in the amended complaint that his copyrights were infringed by co-defendant J & N with the unauthorized publication and distribution of said song in "Bailando y Gozando con ... Gozadera."  The amended complaint further states that infringing phonorecords continue to be illegally copied, produced, recorded, distributed, sold and used and that such actions constitute a blatant violation of copyright laws and the creative work of Mr. Torres.  Torres claims to have suffered lost profits and irreparable harm.  The conduct of the co-defendants is also

CIVIL 02-1728 (HL)                        6

alleged to violate Puerto Rico law and its protection to the moral rights of the author. Particularly, it is asserted that the unauthorized publication and distribution of Torres' musical compositions and the failure of the co-defendants to respect the integrity of the work and to properly attribute authorship to Torres, entitles him to claim damages under Puerto Rico law and the laws of other countries.

Finally, Torres also brings a cause of action for unjust enrichment against all the defendants. Torres requests injunctive relief prohibiting the further infringement of his copyrights. He also seeks to recover actual and statutory damages for the violations in the amended complaint.

B.  Procedural Background

Sony and J & N move for judgment on the pleadings (Docket No. 110) arguing that the amended complaint fails to state viable claims inasmuch as said claims are either preempted by the Copyright Act, barred by the applicable statute of limitations, precluded by the registration requirements of both the Copyright Act and the Puerto Rico Intellectual Property statute, or simply failed to state a valid cause of action against J & N or Sony.

Also under consideration by the court is Torres' motion to exclude co-defendants Sony and J & N's expert witness. In said motion, Torres maintains that the expert designated by the co-defendants, Marti Cuevas, should be excluded since she lacks the qualifications to testify as an expert and because she is allegedly a key material witness to

CIVIL 02-1728 (HL)                              7

be called to testify.  Torres additionally asserts that Mrs. Cuevas is an employee of co-defendant J & N and was directly involved in the copyright infringement at issue.

EMI Latin's motion for summary judgment (Docket No. 182), raises the argument of statute of limitations as to the copyright infringement claim and preemption with respect to the Puerto Rico-law unjust enrichment cause of action.

CDT Records also moves for summary judgment (Docket No. 199), claiming that judgment as a matter of law is warranted in its favor because co-defendants Centro Records and Antonio Rivera represented that they had a license to publish and distribute the song "Triste Final" and also agreed to hold CDT Records harmless for the payment of royalties and any other claim involving authorship and moral rights.  Other grounds raised by CDT Records are preemption of the unjust enrichment claim, dismissal of the statutory damages and attorney's fees request since registration occurred almost ten years after the first publication, and that the copyright infringement cause of action is time-barred.  Also argued is a lack of registration under Puerto Rico law, and an implied non-exclusive license arising from Torres' conduct in accepting payment from third parties.

Co-defendants Sony and J & N's motion for summary judgment asserts the following grounds under which they adduce judgment as a matter of law is warranted:  (1) that Torres does not have a valid copyright certificate; (2) that as argued in their motion to dismiss, the copyright infringement claims are time-barred; (3) that as to the violation of moral rights claim, neither Sony nor J & N exploited Torres' compositions in Puerto Rico;

CIVIL 02-1728 (HL)                    8

(4) that Torres can only assert a moral right violation after he registered his compositions in 2002; (5) that Torres has suffered no damages for the alleged violation of moral rights; (6) that the claim for violation of moral rights is barred by the doctrine of abuse of law; (7) that Torres has failed to mitigate damages; (8) that the claims for violation of moral rights and unjust enrichment are barred by estoppel; and (9) that Torres has waived his moral rights and unjust enrichment claims.

I will address each motion in the order presented, but first the applicable standards of review for the motions pending before the court.

### III.  STANDARDS OF REVIEW

A.  <u>Judgment on the Pleadings: Fed. R. Civ. P. 12(c)</u>

Rule 12(c) provides in pertinent part that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  It has been held that "because rendition of judgment in such an abrupt fashion represents an extremely early assessment of the merits of the case, the trial court must accept all of the nonmovant's well-pleaded factual averments as true[.]" <u>Rivera-Gómez v. De Castro</u>, 843 F.2d 631, 635 (1st Cir. 1988) (citations omitted).  A motion to dismiss under Rule 12(c) cannot be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claims which would entitle [him] to relief." <u>Int'l Paper Co. v. Town of Jay</u>, 928 F.2d 480, 482-83 (1st Cir. 1991) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  In fact, a 12(c) motion should be evaluated

CIVIL 02-1728 (HL)                    9

under the standard applicable to a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  Collier v. City of Chicopee, 158 F.3d 601, 602 (1st Cir. 1998) (observing that motions under Rule 12(c) ordinarily warrant the same treatment as motions under Rule 12(b)(6)); see also Magnum Defense, Inc. v. Harbour Group Ltd., 248 F. Supp. 2d 64, 66 (D.R.I. 2003) (explaining that the standard for a motion under Rule 12(c) is the same as the standard for a motion to dismiss pursuant to Rule 12(b)(6)).

The court's focus should not be whether a plaintiff will ultimately prevail; rather, it should be whether a plaintiff is entitled to present evidence to support his or her claim. Medina Pérez v. Fajardo, 257 F. Supp. 2d 467, 471 (D.P.R. 2003) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984)).  The court may dismiss a complaint under either rule but "only if no relief can be granted based on any set of facts that could be proved consistent with plaintiff's allegations." Magnum Defense, Inc. v. Harbour Group, Ltd., 248 F. Supp. 2d at 66 (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

B.  Admission of Expert Testimony

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony at trial.  It provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

CIVIL 02-1728 (HL)                         10

> experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  In <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 597 (1993), the Supreme Court assigned to trial judges the role of gatekeepers to screen expert testimony that although relevant, was based on unreliable scientific methodologies. Subsequently, the Court extended this gatekeeping function holding that it does not only apply to expert testimony which relies on scientific knowledge, but to testimony that is based on technical and other specialized knowledge as well.  <u>See</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999).

Three requirements must be met before expert testimony may be admitted:  (1) the expert is qualified to testify by knowledge, skill, experience, training, or education; (2) the testimony concerns scientific, technical, or other specialized knowledge; and (3) the testimony is such that it will assist the trier of fact in understanding or determining a fact in issue.  <u>Correa v. Cruisers, A Div. of KCS Int'l, Inc.</u>, 298 F.3d 13, 24 (1st Cir. 2002).  The gatekeeping function of the trial court is "'a flexible one' that 'depends upon the particular circumstances of the particular case at issue.'"  <u>Thorndike v. DaimlerChrysler Corp.</u>, 266 F. Supp. 2d 172, 175 (D. Me. 2003) (quoting <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. at 150).

CIVIL 02-1728 (HL)                              11

    C. <u>Summary Judgment:  Fed. R. Civ. P. 56(c)</u>

    Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial and that a trier of fact could reasonably find in its favor.  <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000).  The party opposing summary judgment must produce "specific facts, in suitable evidentiary form," to counter the evidence presented by the movant.  <u>López-Carrasquillo v. Rubianes</u>, 230 F.3d 409, 413 (1st Cir. 2000) (quoting <u>Morris v. Gov't Dev. Bank of P.R.</u>, 27 F.3d 746, 748 (1st Cir. 1994)).  A party cannot discharge said burden by relying upon "conclusory allegations, improbable inferences, and unsupportable speculation." <u>Id.</u>; <u>see also</u> <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 236-37 (1st Cir. 2002) (quoting <u>J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.</u>, 76 F.3d 1245, 1251 (1st Cir. 1993)) ("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to defeat summary judgment.").

CIVIL 02-1728 (HL)                    12

The court must view the facts in light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor.  See Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002).  A fact is considered material if it has the potential to affect the outcome of the case under applicable law.  Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).

IV.  DISCUSSION AND ANALYSIS

A.  Sony and J & N's Motion for Judgment on the Pleadings

1.  Preemption:

Among other things, Sony and J & N maintain that Torres' unjust enrichment claim is preempted by the Copyright Act.  Specifically, these co-defendants argue that the unjust enrichment cause of action asserted in the amended complaint seeks to recover the same royalties sought as a remedy under the Copyright Act.  Such cause of action, co-defendants maintain, is precluded by 17 U.S.C. § 301 which preempts all legal and equitable rights that are equivalent to any of the exclusive rights protected by 17 U.S.C. § 106.

Torres ripostes contending that the unjust enrichment cause of action is only a subsidiary remedy for copyright infringement.  In addition, Torres dedicates most of his efforts to point out co-defendants' confusion with respect to the allegations in the amended complaint.  According to Torres, the unjust enrichment and moral rights claims are independent from one another.  Torres also maintains that his violation of moral rights claim under the Puerto Rico law is not preempted by the Copyright Act insofar as said

CIVIL 02-1728 (HL)                          13

claim does not involve economic damages, but the right to integrity and attribution of the work.  Finally, Torres submits that his unjust enrichment cause of action is equally not preempted because it is only seeking to recover, as a supplementary remedy, the income not contemplated by the Copyright Act.

Torres correctly points out that his claim for violation of moral rights is not preempted by the Copyright Act.  It appears that the First Circuit has not addressed the specific issue of whether a moral rights claim under Puerto Rico law is preempted by section 301(a).  However, the Puerto Rico Supreme Court has consistently held that a moral rights violation claim is not preempted by the Copyright Act.  See Cotto Morales v. Ríos, 140 D.P.R. 604 (1996); Pancorbo v. Wometco de P.R., Inc., 115 D.P.R. 495 (1984). On the other hand, Torres incorrectly maintains that his Puerto Rico law unjust enrichment cause of action is not preempted.

Section 301 of the Copyright Act provides in pertinent part:

> (a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

CIVIL 02-1728 (HL)                    14

17 U.S.C. § 301(a).  In Álvarez Guedes v. Marcano Martínez, 131 F. Supp. 2d 272 (D.P.R. 2001), the court explained that to avoid preemption, the state law cause of action must incorporate elements beyond the elements necessary to prove the copyright infringement action and regulate conduct that is qualitatively different to the conduct regulated by the Copyright Act. Id. at 279. (citations omitted).  "[I]f a state law cause of action requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." Id. at 279-80 (quoting Data Gen. v. Grumman Sys. Support, 36 F.3d 1147, 1164 (1st Cir. 1994)).

Looking at the allegations in the amended complaint it clearly appears that Torres' unjust enrichment cause of action simply asserts rights that are equivalent to the rights protected by the Copyright Act.  He also requests remedies already covered by the relief sought in his copyright infringement claims.  Specifically, the amended complaint states "[d]efendants' [sic] have unlawfully, willfully, and illegally kept silent as to the copy, adaptation, production, recording, publishing, performance, and distribution or otherwise unfair use of plaintiff's compositions, with the intent of not paying royalties for their sales or licenses." (Amended Complaint, Docket No. 81, at 22, ¶ 6.1.)  The amended complaint further states that "[b]y these willful acts, defendants have generated large amounts of income from licenses and worldwide record sales.  From the sums collected from almost ten

CIVIL 02-1728 (HL)                    15

years of sales, a percentage is due to plaintiff." (Id. ¶ 6.2.)  Without more, the allegations

transcribed above reveal that Torres' unjust enrichment claim does not have elements

beyond those required to be proven for the copyright infringement claim.  The claim for

the payment of a *percentage* of the amounts collected from *licenses and worldwide sales* is

particularly telling of preemption, specifically when the conduct alleged is the same conduct

asserted as copyright infringements (unlawful copying, adaptation, production, recording,

publishing, performance, and distribution of Torres' compositions).  See John G. Danielson,

Inc. v. Winchester-Conant Prop., Inc., 322 F.3d 26, 45 (1st Cir. 2003) (holding a state law

claim preempted where said claim was based on the same behavior giving rise to copyright

liability).

Therefore, I find that the unjust enrichment cause of action is preempted by 17

U.S.C. § 301(a).  As to this issue, Sony and J & N's motion for judgment on the pleadings

should be GRANTED.  I find it unnecessary to address co-defendants' claim that the

amended complaint fails to state a claim upon which relief can be granted with respect to

the unjust enrichment cause of action.

*2.  Statutory Damages and Attorney's Fees:*

The co-defendants further argue that Torres cannot maintain a claim for statutory

damages or for attorney's fees under the Copyright Act inasmuch as the infringements

alleged in the amended complaint occurred prior to registration.  17 U.S.C. § 412(1).

Torres admits as much, but argues that each act of infringement is a distinct harm from

CIVIL 02-1728 (HL)                              16

each other and that therefore, he is entitled to recover, if he so chooses, statutory damages and attorney's fees instead of actual damages and profits, for any copyright infringement after the effective date of registration: January 31, 2002.  Sony and J & N replied that such contention is not supported by authority and that the purpose of 17 U.S.C. § 412 would be frustrated by an interpretation allowing the recovery of statutory damages for infringements after registration.

Section 412 of title 17, United States Code provides in relevant part that:

> [N]o award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for–
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412 (2004); Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1111 n.3 (1st Cir. 1993) ("To maintain an action for statutory damages, the copyrights in the infringed works must be registered.").

Most courts hold that an award of statutory damages and attorney's fees is forbidden by section 412 if the infringement commenced prior to the date of effective registration regardless of whether the infringement continues after registration.  See, e.g., Mason v. Montgomery Data, Inc., 967 F.2d 135, 143 (5th Cir. 1992); X-It Prod., LLC v. Walter Kidde Portable Equip., Inc., 227 F. Supp. 2d 494, 527-28 (E.D. Va. 2002); Rhein Bldg. Co.

CIVIL 02-1728 (HL)                    17

v. Gehrt, 21 F. Supp. 2d 896, 908 (E.D. Wis. 1998); Innovative Networks, Inc. v. Young, 978 F. Supp. 167, 175 (S.D.N.Y. 1997); Singh v. Famous Overseas, Inc., 680 F. Supp. 533, 535-36 (E.D.N.Y. 1988).  The plaintiff has the burden of showing that it complied with section 412's registration prerequisite, Data Gen. Corp. v. Grumman Sys. Support Corp., 825 F. Supp. 361, 364 (D. Mass. 1993), and here, Torres has not carried his burden.  His own pleadings demonstrate that the effective date of registration for the musical compositions at issue was January 31, 2002.  (Amended Complaint, Docket No. 81, at 9, ¶ 3.4.)  The alleged infringements occurred at times prior to said date and the fact that the amended complaint alleges infringements continuing after registration is of no consequence. I find that section 412 precludes Torres from recovering an award of statutory damages and attorney's fees.  Therefore, it is also my recommendation that as to this issue, co-defendants' motion to dismiss be GRANTED.

        3.  Statute of Limitations:

        With respect to the timeliness of the claims for infringement under the Copyright Act, the co-defendants advance similar contentions in their motion for summary judgment. I address here co-defendants' argument that the moral rights violation claim is barred by the applicable one-year statute of limitations.  According to Sony and J &N, the cause of action for moral rights violation brought under Puerto Rico law is barred by the one year limitations period set forth in 31 P.R. Laws Ann. § 5298(2).  Based on said statute, these co-defendants maintain that all claims before May 15, 2001 (one year prior to the filing

CIVIL 02-1728 (HL)                          18

of the original complaint) and July 18, 2002 (one year prior to the filing of the amended complaint) respectively, are time-barred.  Torres disagrees claiming that these co-defendants incorrectly adduced that the one-year statute of limitations applicable to tort actions is the limitations period applicable to violations of moral rights under Puerto Rico's Intellectual Property law, 31 P.R. Laws Ann. § 1401 et seq.  He argues that the three -year statute of limitations set forth in 31 P.R. Laws Ann. § 1401g[1] applies.  Additionally, Torres submits that his claim is not time-barred in any event.  His main contention is that the court must analyze the allegations of prescription applying the "discovery rule" in which the three-year limitations period would not start to run until the claim accrues, that is until the time Torres acquired knowledge of the violation or is chargeable with such knowledge.

Specifically, Torres maintains that he acquired knowledge of the infringement of his copyrights and moral rights shortly before the presentation of the original complaint and with respect to claims added in the amended complaint, shortly before the filing of the same.  In addition, it is Torres' position that the running of the statute of limitations was tolled because Sony and J & N fraudulently concealed facts that would have allowed the plaintiff to acquire knowledge of the infringements earlier.

I find that the limitations period applicable to the moral rights violation is the three-year statute of limitations established in 31 P.R. Laws Ann. § 1401g.  There are no cases

---

[1]The actions provided in section 1401h of this title prescribe three (3) years after each violation became known.  31 P.R. Laws Ann. § 1401g (2002).

CIVIL 02-1728 (HL)                    19

from the Puerto Rico Supreme Court or the Puerto Rico Court of Appeals dealing specifically with the issue of prescription of moral rights actions.  However, the Puerto Rico legislature saw fit to establish a particular limitations period for this type of action.  The co-defendants cite no persuasive authority forcing a conclusion to the contrary.  Consequently, to survive dismissal, Torres' claims must have been brought within three years from the time of accrual.

The allegations of copyright infringement and moral rights violations relate to the same conduct.  Accordingly, I will address the question of whether any or all of the claims are time-barred in the section discussing Sony and J & N's motion for summary judgment.

*4.  Registration Requirements:*

Next is co-defendants' contention that Torres cannot assert a moral rights infringement claim and seek damages for such violation prior to February 14, 2002, the date plaintiff apparently filed an application to register his musical compositions at the Puerto Rico Intellectual Property Registry.  Since co-defendants Sony and J & N raise this issue in their subsequent motion for summary judgment, I defer my recommendation on said issue for the section below covering their motion for summary judgment.

*5.  Foreign Law*:

The last argument in co-defendants' motion for judgment on the pleadings is that the court should dismiss the claims of moral rights violations asserted by Torres under foreign law.  According to these co-defendants, mere reference to the laws of other countries

CIVIL 02-1728 (HL)                    20

is insufficient to state a valid claim.  The co-defendants contend that they are not put on notice regarding the claims under the laws of other countries.

Torres responds that he is in no position to specifically state the countries where he claims that his moral rights where violated.  According to Torres, the information needed in order to ascertain in which foreign countries his compositions were unlawfully published or distributed is in the hands of the co-defendants and without completion of the discovery process, he could not allege the specific exploitation in specific countries.  Further, Torres submits that co-defendants' position is illogical because they know in which countries the phonorecords were distributed so as to be put on notice.  Finally, Torres maintains that under co-defendants' contention, the pleading standard of Rule 8 of the Federal Rules of Civil Procedure will be frustrated because plaintiff would be required to amend the complaint every time a discovery disclosure revealed another country in which the infringing work was found to have been distributed.

In their reply, co-defendants go further in asserting that there was no distribution in foreign countries of the phonorecords at issue.  In addition, the co-defendants argue that they have complied with all the discovery requests on this particular issue.[2]  After carefully reviewing the extensive record, it appears that the compositions at issue were only

---

[2]The court ordered co-defendants to provide plaintiff with his discovery request regarding distribution information.  (Docket No. 169.)  Subsequently, the co-defendants informed the court of their compliance with the court's order.  (Docket No. 176.)

CIVIL 02-1728 (HL)                    21

distributed in the United States and Puerto Rico.  There are no further complaints made

by the plaintiff of outstanding discovery requests on the part of the co-defendants.

Therefore, I find that Torres' claim for violation of his moral rights pursuant to the laws

of other countries should be dismissed.  As to this issue, Sony and J & N's motion for

judgment on the pleadings should also be GRANTED.

     B.  <u>Torres' Motion to Exclude Expert Witness</u>

     Torres filed a motion to exclude the testimony of co-defendant J & N's designated

expert witness.  J & N designated Marti Cuevas (hereinafter "Cuevas") as an expert witness

pursuant to Federal Rule of Civil Procedure 26(a)(2).  Torres objects to said designation

arguing that Cuevas lacks the qualifications to testify as an expert and because she is a

material witness and an employee of J & N.  The specific contention is that Cuevas does

not possess the qualifications to be an expert because her curriculum vitae (hereinafter

"CV") only states that she plays saxophone and considers herself a composer.  It is further

asserted by Torres that her academic background does not qualify her as an expert

inasmuch as she is pursuing a degree in fine arts but has not completed the same.

Furthermore, the publications listed in her curriculum are not authored by her according

to Torres.  In all, Torres maintains that Cuevas lacks the qualifications to testify as an

expert in copyright law.

     In addition, Torres objects to Cuevas' designation on the grounds that she is a

material witness and an employee of co-defendant J & N.  According to Torres, Cuevas will

CIVIL 02-1728 (HL)                         22

be called to testify as to her involvement in the copyright infringements at issue in this case.  Allegedly, she was called upon to obtain authorizations and licenses from plaintiff and to make royalty payments but failed to do so.  Finally, Torres claims that as an employee of J & N, Cuevas is further precluded from serving as an expert insofar as she is not an employee regularly engaged in giving expert testimony for her employer.

J & N opposes Torres' motion adducing, *inter alia*, that contrary to Torres' contention, Cuevas does have the qualifications to give expert testimony as to damages under the Copyright Act by virtue of her experience in the music industry.  Specifically, J & N submits that Cuevas has experience as a performing artist, composer, producer and publisher, who has negotiated recording and publishing contracts in the music industry. She has knowledge of the customs and procedures involved in the exploitation of musical compositions and in the accounting and payment of royalties to authors.  Furthermore, J & N argues that Cuevas is not precluded from testifying as an expert witness merely because she is also a fact witness, and that Torres presents no authority for the proposition that Cuevas cannot be an expert witness due to her alleged involvement in the infringement.  Cuevas' testimony should be allowed, according to J & N, because she is qualified by reason of her knowledge and experience and because her testimony would assist the trier of fact in the determination of facts in dispute, particularly the issue of damages.

CIVIL 02-1728 (HL)                        23

As stated above, the admissibility of expert testimony is governed by Rules 702 and 703 of the Federal Rules of evidence and three requirements must be satisfied:  (1) the expert must be qualified to testify by knowledge, skill, experience, training or education; (2) the testimony must concern scientific, technical or other specialized knowledge; and (3) said testimony is such that it will assist the trier of fact in understanding the evidence or in determining a fact in issue.  United States v. Corey, 207 F.3d 84, 88 (1ˢᵗ Cir. 2000) (citations and internal quotations omitted).

The co-defendant proposes Cuevas as an expert to testify about "relevant music industry custom concerning exploitation of musical compositions, accounting to and payment of royalties to an author of a musical composition and alleged damages concerning Plaintiff's Copyright claims." (J & N's Opposition, Docket No. 140, at 3, ¶ 8.)  Contrary to Torres' position, Cuevas' CV establishes, at least at this stage of the proceedings, that her qualifications are considerable, to testify about the music industry and as to matters concerning the exploitation of musical compositions.  She has worked in the industry for years and has dealt directly with the publishing and distributing of musical compositions and the accounting and payment of royalties to composers.  This is undoubtedly an area where neither the court nor the trier of fact is likely to have the knowledge and training necessary to determine certain issues.  I find that her testimony may assist the trier of fact in determining facts in issue, specifically in regards to damages for copyright infringement.

CIVIL 02-1728 (HL)                    24

Torres' allegation that by playing a musical instrument, Cuevas lacks the qualifications to testify as an expert does not tell the whole story regarding her knowledge and experience as evidenced by her CV.  Her experience in the music appears to be ample.  And the adversary process provides tools to attack said qualifications at trial (voir dire) and to challenge the reliability of her testimony (cross-examination).

Finally, Torres' remaining contentions equally lack merit.  First, Cuevas does not attribute to herself the publications listed in her CV.  The CV itself is clear in stating that she participated in said publications either as an editor or contributor.  Second, the fact that she may have been involved in the copyright infringement or that she is an employee of the co-defendant does not preclude her from testifying as an expert.  Torres cites no authority for these two propositions.  He only cites to Rule 26(a)(2) of the Federal Rules of Civil Procedure for his contention that an employee can only testify as an expert if said employee is regularly involved in giving expert testimony.  However, Rule 26(a)(2) does not govern the admissibility of expert testimony; it covers the disclosure requirements of witnesses testifying under Rule 702 of the Federal Rules of Evidence.  Nothing in Rule 26(a)(2) can be read as disqualifying Cuevas from testifying as an expert merely because she might also be called to testify as to facts.  See United States v. Rivera-Rosario, 300 F.3d 1, 17-18 (1st Cir. 2002) (affirming the district court's refusal to exclude witness who testified both as a fact and expert witness).  Therefore, it is my recommendation that Torres' motion to exclude J & N's proposed expert witness be DENIED.

CIVIL 02-1728 (HL)                              25

C.  EMI Latin's Motion For Summary Judgment

Against EMI Latin, the amended complaint asserts three causes of action with respect to the song "Noche de Fiesta."  Torres alleges copyright infringement, violation of moral rights under Puerto Rico's Intellectual Property law and unjust enrichment also under Puerto Rico law.  EMI Latin now moves for summary judgment on the grounds that Torres' copyright infringement claims are time-barred and that the unjust enrichment claims is preempted.  It is further requested by EMI Latin that if the court dismisses Torres' federal claim, that it declines to exercise jurisdiction over the remaining state-law causes of action.

Torres filed an opposition to EMI Latin's motion where he claims that EMI Latin relies on incorrect interpretations of the facts and misstatements of the controlling law.  Additionally, Torres contends that there are genuine issues of material fact precluding the entry of judgment as a matter of law.  Specifically, Torres maintains that there are material facts in dispute with respect to his knowledge of the phonorecord "Merenhits '94" in which one of his compositions was exploited and which was distributed by EMI Latin.  According to Torres, he became aware of "Merenhits '94" just months before filing the amended complaint.  Therefore, Torres submits that the copyright infringement claim against EMI Latin accrued at that time and was clearly brought within the three-year limitations period set forth in the Copyright Act.  Finally, Torres argues that his unjust enrichment cause of action is not preempted.

CIVIL 02-1728 (HL)                                26

Unless otherwise indicated, the following recount of facts is undisputed. On February 1, 1994, EMI Latin and J & N entered into an exclusive license agreement. In it, J & N licensed to EMI Latin the exclusive right to manufacture, distribute, and sell recordings based on "master recordings" owned or controlled by or licensed to J & N. The agreement authorized EMI Latin to distribute said recordings throughout the United States and Puerto Rico, and provided for a distribution fee to be paid to EMI Latin. The agreement was valid from February 1, 1994 until January 31, 1997 and stated that J & N and its recording artists waived any so-called moral rights they may have in the masters and recordings licensed under the agreement. Apparently, J & N also agreed to bear the sole responsibility for distributing royalty payments originating from EMI Latin to the various recording artists whose recordings were licensed pursuant to the terms of the license agreement.

After the execution of the agreement, J & N licensed a number of recordings for distribution and sale. Among them was a rendition of "Noche de Fiesta" by "Orquesta Gozadera." Additionally, EMI Latin distributed in the United States and Puerto Rico, in both cassette and compact disc format, a compilation recording titled "Merenhits '94." The same included the song "Noche de Fiesta" interpreted by the "Orquesta Gozadera." This recording was distributed in the Puerto Rico market from March 1994 through April 1997.

CIVIL 02-1728 (HL)                    27

EMI Latin asserts that it periodically forwarded to J & N the royalty amounts payable, based on sales, from the "Merenhits '94" records.   Furthermore, EMI Latin submits that it stopped distribution of "Merenhits '94" cassettes in April of 1996 and of compact discs in April of 1997.   Finally, EMI Latin maintains that it deleted said recordings from its sales catalogue and product listings.   At the time distribution stopped, EMI Latin had sold about 16,478 net units (both cassettes and compact discs) of "Merenhits '94."

    *1. Statute of Limitations*

EMI Latin maintains that Torres' copyright infringement claim in relation to the distribution of "Noche de Fiesta" in "Merenhits '94" accrued in March of 1994 when the sale to the public of that album commenced in Puerto Rico and the United States, or at the latest in April 1997, when such distribution stopped.   Additionally, EMI Latin argues that Torres' own testimony corroborates that he was aware of "Merenhits '94" as early as 1994.

Torres contends to the contrary that EMI Latin relies on misconceptions from the record where EMI Latin uses Torres' deposition answers regarding his knowledge of the publication of "Noche de Fiesta" in a wholly separate phonorecord, namely, "Bailando y Gozando con ... Gozadera" as if these statements referred to his knowledge of "Merenhits '94."   In turn, Torres claims that it is uncontested that he learned of the existence of "Merenhits '94" in 2003, just months before filing his amended complaint.   According to

CIVIL 02-1728 (HL)                      28

Torres, if he had prior knowledge of the existence of "Merenhits '94" before that date, he would have included a claim for such infringement in the original complaint.

Section 507(b) of title 17, United States Code provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17 U.S.C. § 507(b).  A copyright infringement claim "accrues when a plaintiff knows of the infringement or is chargeable with such knowledge." Bridgeport Music, Inc. v. Diamond Time, Ltd., 371 F.3d 883, 889 (6th Cir. 2004) (citing Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994)).  Since each act of infringement constitutes a distinct harm, it has been established that claims that accrued more than three years before suit was commenced are barred by the statute of limitations, but claims that accrued within the statutory period are not precluded.  See Roley v. New World Pictures, Ltd., 19 F.3d at 481; see also Stone v. Williams, 970 F.2d 1043, 1049-50 (2d Cir. 1992).  A party cannot reach back and recover damages for claims that accrued outside the limitations period even when there are acts of infringement that accrued within the limitations period.  Hotaling v. Church of Jesus Christ of Latter-Day Saints, 118 F.3d 199, 202 (4th Cir. 1997).  However, as stated, knowledge of the infringement is central to the statute of limitations question.  Recently, the Ninth Circuit held that "§ 507(b)permits damages occurring outside of the three--year window, so long as the copyright owner did not discover--and reasonably could not have discovered--the infringement before the

CIVIL 02-1728 (HL)                        29

commencement of the three-year limitation period." <u>Polar Bear Prod., Inc. v. Timex Corp.</u>, 384 F.3d 700, 706 (9th Cir. 2004).

A review of the evidence in the record reveals that there is a factual dispute regarding the time in which Torres acquired knowledge of the infringement anent the publication of "Noche de Fiesta" in the phonorecord "<u>Merenhits '94</u>."  In his deposition, Torres stated that he learned of the "<u>Merenhits '94</u>" and the publication of his composition "Noche de Fiesta" interpreted by "Orquesta Gozadera" a few months before October 29, 2003 (the day of the third session of his deposition), and presumptively, sometime before the filing of the amended complaint on July 18, 2003.  (Docket No. 228, Ex. C, at 8–9.)  It was actually discovered by Torres' attorney's who showed it to him.  (<u>Id.</u>)  In fact, the original complaint, filed in May of 2002, does not contain a copyright infringement claim against EMI Latin with respect to "Noche de Fiesta" in the phonorecord "<u>Merenhits '94</u>," further evidencing the lack of knowledge regarding such infringement.  (Complaint, Docket No. 1.)  The allegedly undisputed facts submitted by EMI Latin do little to negate Torres' assertion.  EMI Latin seems to suggest that because Torres knew of the publication of "Noche de Fiesta" in phonorecords other than "<u>Merenhits '94</u>," and because he knew of public interpretations of said song by "Orquesta Gozadera," that he knew or should have known of "<u>Merenhits '94</u>."  (Statement of Uncontested Facts, Docket No. 182, ¶¶ 16-19.) Additionally, EMI Latin asserts that because distribution of "<u>Merenhits '94</u>" in the Puerto Rico market took place between 1994 and 1997, that Torres is charged with knowledge of

CIVIL 02-1728 (HL)                          30

the infringement for statute of limitations purposes.  (Id. ¶¶ 31-34.)  In addition, EMI

Latin maintains in its reply to Torres' opposition that with minimal diligence, plaintiff

should have discovered the infringement because from 1994 to 1997, "Merenhits '94" was

widely and publicly distributed in the retail stores of the Puerto Rico market.  Thus,

according to EMI Latin, Torres should have known of the infringement and he should have

filed suit at least within three years of the last possible infringement, that is 1997 when the

distribution stopped.  I disagree.

     The evidence submitted by EMI Latin does not establish an absence of disputed

material facts.  At the very least, and since the court must review the facts in the light most

hospitable to Torres, I find that he has succeeded in demonstrating that there is a factual

controversy regarding his knowledge of "Merenhits '94."  Furthermore, the court is not

presented with sufficient, non-conclusory assertions and evidence demonstrating that

Torres failed to use due diligence and timely investigate his claims.  It may very well be that

Torres did not exercise due diligence in discovering his claim.  I cannot make that

assessment as a matter of law with the present record.  John G. Danielson, Inc. v.

Winchester-Conant, Prop., Inc., 186 F. Supp. 2d 1, 26 (D. Mass. 2002), vacated and

remanded in part on other grounds by 322 F.3d at 26 (holding that summary judgment was

inappropriate because the question of whether plaintiff should have known of the

actionable wrongdoing in the case by exercising due diligence was a "fact-intensive issue

best left to a jury").  Consequently, I cannot conclude at this stage and as a matter of law

CIVIL 02-1728 (HL)                    31

that Torres' copyright infringement claim is barred by the three-year statute of limitations

set forth in 17 U.S.C. § 507(b).  As to this issue, I recommend that EMI Latin's motion for

summary judgment be DENIED.[3]

    *2.  Preemption*

    EMI Latin also moves for summary judgment with respect to Torres' unjust

enrichment claim arguing that the same is preempted.  As to this issue, I adopt my

reasoning in Section IV, A, 1 (the discussion of J & N's motion for judgment on the

pleadings) of this report and find that Torres' unjust enrichment claim is preempted by the

Copyright Act and should be dismissed.  Therefore, it is my recommendation that EMI

Latin's motion be GRANTED as to this issue.

    D.  CDT Records' Motion for Summary Judgment

    The original complaint as well as the amended complaint alleges copyright

infringement and moral rights violations against CDT Records in relation to the

distribution of the song "Triste Final" in the phonorecord titled "Manuel y el Trío

_____

    [3]EMI Latin similarly asserts that Torres' claims under Puerto Rico's Intellectual
Property law are barred by three-year statute of limitations set forth in 31 P.R. Laws Ann.
§ 1401g.  To the extent that Puerto Rico jurisprudence has adopted a so called discovery
rule for purposes of accrual, albeit in relation to the one-year statute of limitations for tort
claims, 31 P.R. Laws Ann. § 5298(2), González-Pérez v. Hosp. Interamericano de Medicina
Avanzada (HIMA), 355 F.3d 1, 2 (1st Cir. 2004) (citing Espada v. Lugo, 312 F.3d 1, 5 (1st
Cir. 2002)), the same factual dispute as to knowledge of the infringing conduct precludes
the entry of judgment as a matter of law in regards to Torres' moral rights violation claim.

CIVIL 02-1728 (HL)                    32

<u>Borinquen</u>." CDT Records is also included in the general unjust enrichment cause of action asserted against all co-defendants in the amended complaint. The present motion for summary judgment raises several grounds, which according to CDT Records, warrant dismissal of all claims against it. First, CDT Records argues that co-defendants Antonio Rivera and Centro Records guaranteed that they had a license to "Triste Final" when they entered into the distribution agreement with CDT Records. In said agreement, the former also agreed to hold CDT Records harmless and release it from any liability arising out of the distribution of said composition. It is further claimed that Antonio Rivera and Centro Records also agreed to pay any royalties due with respect to any claim made by a third party as to any conduct related to the distribution agreement. Second, CDT Records submits that the unjust enrichment cause of action is preempted by the Copyright Act. Third, CDT Records argues that Torres is precluded from recovering statutory damages inasmuch as registration took place almost ten years after the first publication. Fourth, it argues that both the copyright infringement and moral rights violation claims are barred by their applicable three-year statutes of limitations. And fifth, it argues that by accepting payment from a third party, Torres granted an implied non-exclusive license for the publication and distribution of the composition in question.

     In opposition to CDT Records' motion for summary judgment, Torres responds that he has never received or cashed the alleged checks by which he purportedly granted an implied license for the distribution of "Triste Final." At the very least, material issues of

CIVIL 02-1728 (HL)                         33

fact preclude disposition of the issue prior to trial according to Torres.  In addition, Torres

contends that his copyright claims against CDT Records are not time-barred because there

are factual issues in dispute as to when Torres acquired knowledge of the infringement.

Torres claims in the alternative that damages are not limited to three years prior to

commencement of the action, that he can recover damages for moral rights violations prior

to registration, that the unjust enrichment claim is not preempted, and that Torres can

recover statutory damages under the Copyright Act for infringements that took place prior

to registration, or in the alternative, at least for infringements after registration.

I start with claims that have already been considered in my prior discussion.

*1.  Unjust Enrichment*

As noted in Section  IV, A, 1 (the discussion of J & N's motion for judgment on the

pleadings) of this report, Torres' unjust enrichment cause of action is preempted by the

provisions of the Copyright Act.  Consequently, as to this issue, CDT Records' motion for

summary judgment should be GRANTED.

*2.  Statutory Damages*

I have discussed the effect of 17 U.S.C. § 412(1) on Torres' ability to recover

statutory damages and attorney's fees given the fact that the effective date of registration

was January 31, 2002.  In this case, Torres does not dispute that the publication and

distribution of "Triste Final" by CDT Records occurred at times prior to registration in

2002. Thus, it is undisputed that Torres cannot recover statutory damages and attorney's

CIVIL 02-1728 (HL)                    34

fees under the Copyright Act for infringements occurring prior to registration, regardless of whether the infringement continued after registration.  (See Section III, A, 2 of this Report and Recommendation.)  As to this issue, I also recommend that CDT Records' motion be GRANTED.

   *3. Statute of Limitations*

   CDT Records' arguments with respect to this issue are limited to claim that all copyrights claims asserted in the complaint prior to May 5, 1999 are barred by the Copyright Act's three-year statute of limitations.  Such contention is grounded on the assertion that CDT Records distributed "Triste Final" between May 9, 1997 and May 5, 1998.  So, the last possible date of accrual, according to CDT Records was May 5, 1998.  However, Torres maintains, albeit indirectly,[4] that he acquired knowledge of the infringement within the limitations period or that in the alternative, damages are not limited to three years prior to the filing of the complaint.

   Consistent with my discussion above regarding EMI Latin's motion for summary judgment, I find that CDT Records has failed to demonstrate a complete absence of material issues of fact with respect to the limitations question.  While it may very well be that Torres either had knowledge of the infringement or was not diligent in discovering the

_____

[4]Instead of claiming that he acquired knowledge of the infringement at times subsequent to the distribution of the song, Torres argues that CDT Records has not submitted evidence establishing that he had knowledge of the infringement or is chargeable with such knowledge, at the time distribution took place.

CIVIL 02-1728 (HL)                          35

same, the question is best left for the trier of fact.  Resolution of this question is not

appropriate for  summary disposition.  CDT Records' motion with respect to this issue

should be DENIED.

> *4.  Registration Requirements*

CDT Records also claims that Torres cannot recover damages for the alleged

infringement of his moral rights under Puerto Rico law inasmuch as he did not registered

his composition "Triste Final" in the Intellectual Property Registry of Puerto Rico until

February 14, 2002. Such registration, CDT Records contends, is a prerequisite for bringing

a moral rights violation claim.  Torres in turn argues that CDT Records misinterprets the

holding in the only non-binding authority cited by the co-defendant and omits cases

holding that, under Puerto Rico law, registration is not a requirement for maintaining a

claim for moral rights violation.

Puerto Rico's Intellectual Property Act provides in pertinent part that

> The registrations authorized in this section shall have the effect
> of reserving the corresponding copyright in behalf of the author
> of the registered work or his/her successors or beneficiaries. In
> order to enjoy the benefits of this chapter, it is necessary to
> have registered the rights and works that support it in the
> Copyright Registry ….

31 P.R. Laws Ann. § 1402d (1998).  Furthermore, the Puerto Rico Supreme Court has held

that in order to enjoy the benefits of Puerto Rico's Intellectual Property law, a person must

register the right in the Intellectual Property Registry.  Harguindey Ferrer v. UI, 148 D.P.R.

CIVIL 02-1728 (HL)                    36

13, 30 (1999).  The only exception to this registration requirement appears to be, according to the Court, in cases where the allegation is that another person attributed to himself authorship of the work.  Id. at 31 (translation ours); see also Jiménez Hernández v. Vibración Musical, Inc., 2001 WL 1758094, at *4 (P.R. Ct. App. Nov. 14, 2001).  The Court reasoned, quoting Prof. Pedro G. Salazar, that given the personal character of moral rights, it would appear unnecessary to condition reserving that right on registration of the work in an intellectual property registry.  A registration requirement is justified in cases where indivisible and transferrable economic rights are involved, to establish a clear chain of title or to facilitate judicial resolution of controversies by applying rebuttable presumptions of title.  Harguindey Ferrer v. UI, 143 D.P.R. at 31 (translation ours) (quoting Pedro G. Salazar, El derecho moral del autor en las legislaciónes puertorriqueña, norteamericana y española, 31 (No. 3) Rev. Jur. U.I.A. 407, 419 (1997)).  In those cases, to demand registration in order to exercise the right would seem contrary to the nature of the right.  Id. (translation ours).

        It is evident from the record and from the pleadings that CDT Records is not claiming to be the author of the composition at issue.  If such were the case, then Torres would be, in accordance with the principles explained above, exempt from the registration requirement set forth in 31 P.R. Laws Ann. § 1402d.  However, the Puerto Rico Supreme Court's pronouncement in Harguindey Ferrer forces the conclusion that registration is indeed required in order to enjoy the benefits and protections of Puerto Rico's Intellectual

CIVIL 02-1728 (HL)                    37

Property law, particularly in cases like the present one, where authorship is not an issue, but rather the protection of the work's integrity and the recovery of damages for violations of moral rights.

Torres applied for registration at the Puerto Rico Intellectual Property Registry on February 14, 2002. A Certificate of Registration 02-26P-01a-078 was issued. Nevertheless, nothing is submitted by the plaintiff, other than his own conclusory statements, to contest the allegation that distribution of "Triste Final" in the phonorecord titled "<u>Manuel y el Trío Borinquen</u>" occurred at times prior to registration. The court is presented with the unsupported conclusion that the song was first released in 1997 and re-released in 2001. Additionally, Torres maintains, without submitting any evidence, that the distribution of this composition continued to the time of the filing of the complaint. In its reply, CDT Records is willing to concede and include December of 1999 as the last date in which a sale might have occurred. Still, I cannot conclude that an infringement occurred after the song had been registered. It appears that there is no dispute worthy of a trial with respect to the fact that the alleged infringement of Torres' moral rights in his composition "Triste Final" occurred before said work was registered. Therefore, Torres is precluded, as a matter of law, from invoking the benefits and protections of Puerto Rico's Intellectual Property Act. His moral rights violation claim should be DISMISSED with respect to CDT Records.

CIVIL 02-1728 (HL)                              38

### 5. *Implied License*

CDT Records contends that the copyright infringement claims asserted against it must be dismissed inasmuch as Torres granted an implied non-exclusive license when he accepted payment as royalties for the distribution of his compositions. Torres responds that he did not receive or cash the checks presented by CDT Records as evidence for its implied non-exclusive license argument. As to this issue, summary judgment should be denied since CDT Records fails to establish the absence of a genuine issue of material facts.

CDT Records is correct in noting that the existence of an implied license is an exception to the requirement that any transfer of copyright ownership be in writing as set forth in 17 U.S.C. § 204(a). An implied license is specifically excluded from the definition of "transfer of copyright ownership." 17 U.S.C. § 101(a); see also Atkins v. Fischer, 331 F.3d 988, 991 (D.C. Cir. 2003). An implied license need not be evidenced by a writing; it can be granted orally or implied by conduct. Carson v. Dynegy, Inc., 344 F.3d 446, 451 n.5 (5th Cir. 2003) (citing Lulirama Ltd. v. Axcess Broad. Serv., Inc., 128 F.3d 872, 879 (5th Cir. 1997)). Because an implied license is an affirmative defense to infringement, the defendant bears the burden of demonstrating the existence of such a license. Lulirama Ltd. v. Axcess Broad. Serv., Inc., 128 F.3d at 884; see also John G. Danielson, Inc. v. Winchester-Conant Prop., Inc., 322 F.3d at 40.

Assuming that accepting payment supposedly as royalties is enough to imply a non-exclusive license, see, e.g., Atkins v. Fischer, 331 F.3d at 992-93; I.A.E., Inc. v. Shaver, 74

CIVIL 02-1728 (HL)                              39

F.3d 768, 778 (7th Cir. 1996); <u>Effects Assoc., Inc. v. Cohen</u>, 908 F.2d 555, 558-59 (9th Cir.

1990), I find that CDT Records simply fails to show that Torres received or cashed the

checks at issue.  As an exhibit to its motion for summary judgment, CDT Records submit

copies of checks issued by "Sabrosos Publishing" to the order of Torres.  (Docket No. 198.)

The checks are consecutively numbered with the exception of one.  They are checks number

170 to 176.  Check number 174 is the only one that does not appear in the series.  Four

of the checks are dated February 5, 2002.  Two of them are dated May 13, 2002, that is

two days before Torres filed his original complaint.  Finally, the amounts of the checks

fluctuate between $10.41 and $711.63.

        Nevertheless, CDT Records fails to establish that these checks, issued by an entity

other than it, were cashed or received by Torres.  There is nothing in the record showing

that these checks were personally delivered or mailed to Torres, cashed by him or deposited

in his account.  Torres in turn denied in his deposition ever receiving said payment.  (<u>See</u>

Torres' Dep., 3d Session, Docket No. 227, Ex. 4, at 183.)  CDT Records simply fails to

meet its burden of proving the existence of an implied non-exclusive license as an

affirmative defense to the alleged copyright infringement.  As to this issue, I recommend

that CDT Records' motion for summary judgment be DENIED.

        *6.  The Distribution Agreement*

        Finally, CDT Records claims that summary judgment is warranted because it entered

into an agreement with co-defendants Centro Records and Antonio Rivera for the

CIVIL 02-1728 (HL)                          40

distribution of "<u>Manuel y el Trío Borinquen</u>."  In said agreement, Centro Records and

Antonio Rivera allegedly agreed to release CDT Records from any liability for, among

others, the violation of copyrights or moral rights stemming from the distribution of said

phonorecord.  It is additionally claimed by CDT Records that it has made numerous

requests to co-defendants Centro Records and Antonio Rivera to assume its defense and

to provide the agreed release of liability.  No satisfactory response has been received even

though the existence and validity of said agreement is undisputed.  Consequently, CDT

Records requests that if the case is not dismissed against it, that Centro Records and

Antonio Rivera assume its defense and pay any award rendered against CDT Records,

including attorney's fees, in accordance with the terms of the distribution agreement.

I will not enter into the merits of CDT Records' request that co-defendants Centro

Records or Antonio Rivera assume its defense and be responsible for any award by virtue

of an agreement between these two parties.  Similarly, I express no opinion as to the effect

of such agreement releasing CDT Records from liability, since the same is found in the

context of a motion for summary judgment directed to plaintiff.  It would appear that the

proper procedural device to advance such contention should be a cross-claim against Centro

Records or Antonio Rivera, both named defendants. The validity of the agreement between

them and its effect over the present controversy is not properly before the court.

CIVIL 02-1728 (HL)                    41

E. <u>Sony and J & N's Motion for Summary Judgment</u>

The final motion is Sony and J & N's motion for summary judgment, which is based on several grounds: (1) that Torres does not have a valid copyright registration; (2) that the copyright infringement claims are time-barred; (3) that Torres cannot maintain a moral rights violation claim because none of his compositions were exploited by J & N or Sony in Puerto Rico; (4) that any moral rights violation claim is also precluded prior to February 14, 2002 because it was not registered; (5) that Torres has not suffered any damages for the alleged violation of moral rights; (6) that the moral rights violation claim is barred by the doctrine of abuse of law and by estoppel; (7) that the unjust enrichment claim is also barred by estoppel; (8) that the moral rights violation and unjust enrichment claims are barred by Torres' failure to mitigate damages; and (8) that Torres has waived his moral rights violation and unjust enrichment claims.

In opposition to the motion for summary judgment, Torres argues that he has a valid copyright because the copies of the compositions deposited at the copyright office are not, as co-defendants suggest, reconstructions from memory. Further, Torres contends that his copyright claims against co-defendants Sony and J & N are not time-barred since he has established that he became aware of the unauthorized publications while performing research in preparation for the filing of the present complaints. As to his moral rights violation claim, Torres submits that the co-defendants erroneously assert that the phonorecords at issue were not distributed in Puerto Rico. Finally, as to the remaining

CIVIL 02-1728 (HL)                    42

contentions raised by Sony and J & N, Torres advances several arguments in opposition. Generally, he maintains that he is entitled to recover damages for the infringements to his moral rights that took place prior to registration and that he has indeed suffered damages for such infringement, that Sony and J & N's abuse of law argument is precluded by the equitable doctrine of unclean hands, that he has not failed to mitigate damages, that the doctrine of estoppel is inapplicable, and that he has not waived any of his claims.

*1. Copyright Registration*

Sony and J & N argue that Torres' copyright infringement claim must be dismissed as a matter of law because he lacks a valid copyright registration for the compositions at issue. Specifically, these co-defendants maintain that the materials deposited at the copyright office as the required copies of the work, are reconstructions of the original compositions recreated from memory. As such, it is co-defendants' position that the deposited copies submitted for registration do not comply with the requirements of 17 U.S.C. § 408(b). Co-defendants further assert that Torres has admitted to the reconstruction from memory of the compositions, made almost a decade after he wrote the original lyrics.

Torres argues to the contrary that, in 1994, he transcribed the words of his compositions and that in 2000, he relied on such transcription for the copies that were eventually submitted to the copyright office. Accordingly, Torres claims that the deposited copies are not reconstructions from memory. Torres also maintains that the deposit

CIVIL 02-1728 (HL)                    43

requirement is to resolve controversies regarding the copyrightable work and that, in this case, there is no dispute with respect to plaintiff's authorship of the songs.  Finally, Torres submits that co-defendants' position in essence will require that an author register his work the same day of creation or be forever barred from defending against infringements to his copyrights.

Under the Copyright Act, a copy or copies of the work sought to be registered must be deposited as part of the application process in order to obtain a copyright registration. 17 U.S.C. § 408(b)(1) and (2); see also Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1211 (9th Cir. 1998).  The co-defendants rely heavily on two cases from other circuits holding "that any 'copy' deposited as part of an application for a certificate of copyright registration must be virtually identical to the original and must have been produced by directly referring to the original."  Kodadek v. MTV Networks, Inc., 152 F.3d at 1212; see also Coles v. Wonder, 283 F.3d 798, 801-02 (6th Cir. 2002).  In these cases, plaintiffs' copyright infringement claims were foreclosed because they did not obtain valid certificates of copyright registration.  The materials submitted by both parties in said cases were reconstructions rather than virtually identical copies produced by directly referring to the original.[5]  In Kodadek, for instance, the plaintiff submitted drawings reconstructed from

_____

[5]Also referred to by the Kodadek court as "bona fide copies of the original work," the deposited copies must be made by directly referring to the original work.  Subsequent copies made referring to "bona fide copies" are also acceptable.  Kodadek v. MTV Networks, Inc., 152 F.3d at 1212.

CIVIL 02-1728 (HL)                    44

memory.  The court deemed such reconstruction insufficient.  <u>Kodadek v. MTV Networks,</u>

<u>Inc.</u>, 152 F.3d at 1212.   In <u>Coles</u>, on the other hand, the plaintiff submitted a

reconstruction of the recording in question made in 1990 in order to register a composition

allegedly created in 1982.  The court found that the plaintiff could not establish that the

1990 reconstruction was produced after listening to an audio copy of the original 1982

rendition.   Therefore, the court found that the "copy" deposited in 1990 was only a

reconstruction and could not receive a valid copyright registration.  <u>Coles v. Wonder</u>, 283

F.3d at 802.  The rationale for such a rule, which at first blush appears harsh, seems to be

that to allow reconstruction of the work not based on the original work would create the

risk of fraudulent applications.   <u>Seiler v. Lucasfilm, Ltd.</u>, 808 F.2d 1316, 1322 (9th Cir.

1987).  In that case the court held:

> The Copyright Act does not contemplate the copyrighting of a
> now non-existent original on the basis of a tendered
> reconstruction. Section 408 specifies the types of material that
> must be deposited along with an application for a certificate.
> The permissible materials include bona fide copies of the
> original work only; there is no mention of "reconstructions." If
> it were otherwise, the possibilities for fraud would be limitless.

<u>Id.</u> Thus, the general question becomes whether there is a factual controversy regarding the

validity of Torres' copyright registration.   The specific question, however, is whether the

copies submitted in Torres' registration application qualify as bona fide copies of the

original work.

CIVIL 02-1728 (HL)                          45

In his deposition, Torres stated that he does not have the original piece of paper in which he wrote the words to the song "Noche de Fiesta." (Torres' Dep., Docket No. 200, Ex. G, at 57.)  He does not know what happened to it.  (Id., Ex. H, at 96.)  However, Torres testified that he generally does not give much importance to the paper in which the words are written because he immediately records the songs in audio cassettes.  (Id., Ex. G, at 57.)  Nevertheless, he stated that he gave the cassette to a friend, Rubén Cañuelas, and that the day he wrote the song, sometime back in 1992, was the last day he saw that cassette.  (Id. at 58.)  As to "Triste Final," Torres said in his deposition that he wrote the words to that song in 1993.  (Id., Ex. H, at 38.)  He recorded the song in an audio cassette and gave it to Antonio Rivera; Torres does not know what happened to the cassette after that.  (Id., Ex. H, at 60-61.)  In regards to the composition "Bebo por Ti," Torres also claims to have written the words to that song in 1993.  (Id., Ex. I, at 32.)  Once again, he does not have the original piece of paper in which he wrote that song and that day was also the last day he saw the piece of paper.  (Id., Ex. I, at 40.)  The song was also recorded in an audio cassette as it was his practice, but he did not see the cassette again after Rubén Cañuelas took it that day.  Finally, Torres stated that sometime in 2001 he made computer transcriptions and audio recordings of the songs at issue here.  Those were used as the copies eventually submitted to the copyright office for registration.  (Id., Ex. I, at 98.)

Torres denies having reconstructed from memory the copies deposited as part of his application for a copyright registration certificate.  He declared that around 1994, he

CIVIL 02-1728 (HL)                    46

transcribed in handwritten form the original words to the songs he had composed. Subsequently, around the year 2000, he began transcribing the words into a computer by making reference to the 1994 handwritten papers.  The purpose of transcribing the lyrics into a computer was to eventually present the compositions at the copyright office for registration.  Torres submits that after he typed the lyrics, he discarded the handwritten copies.  (Torres' Opposing Statement of Material Facts, Docket No. 232, at 7.)

In view of this evidence, if the court were to adopt and follow the holdings of Kodadek and Coles, Torres' proffer would be insufficient to show a valid copyright registration.  The evidence clearly shows that what he submitted to the copyright office are reconstructions of the work made from memory.  He attempts to create a controversy by stating that the copies were made relying on handwritten copies made in 1994.  But there is nothing submitted by Torres to explain which source, other than his memory, he used to transcribe the lyrics in 1994, specially when it is undisputed that the original words for the songs were written in 1992 and 1993.

However, I question the holdings in Kodadek and Coles.  First, those are the only two reported decisions refusing to give copyright protection on the basis that the copies submitted under 17 U.S.C. § 408(b) were reconstructions rather than what they call bona fide copies of the original work.  The controversy in those cases arose in the context of a dispute regarding authorship of the work at issue.  None of the co-defendants in the present case, at least as far as the summary judgment stage is concerned, seem to be challenging

CIVIL 02-1728 (HL)                              47

Torres' allegation that he is the author of the compositions.  Thus, it would frustrate the purpose of the Copyright Act to summarily deny protection to plaintiff.

In the First Circuit, it has been held that immaterial errors in the deposit requirement of section 408(b) does not invalidate an otherwise valid copyright registration. See Data Gen. v. Grumman Sys. Support, 36 F.3d at 1163.  The court of appeals in that case refused to decide whether material errors in the copyright deposit destroy the presumption of validity of a copyright conferred by the registration of a work.  See 17 U.S.C. § 410(c).  The court assumed for purposes of the discussion that a material error may destroy the presumption of validity.  Data Gen. v. Grumman Sys. Support, 36 F.3d at 1163.  However, the principal purpose of the deposit requirement is to prevent confusion about which work the author is attempting to register and to provide the copyright office with an opportunity to assess the copyrightability of the applicant's work.  Id. at 1161-62. Providing notice to would-be infringers of the extent of their civil liability is not a goal that Congress had in mind when it established the deposit requirement.  Id. at 1162 n.26.  This is so because an owner is free to register at any time before filing suit regardless of whether registration takes place after the alleged infringement.  Id.  In view of this, it would appear incongruous with the purpose of the Copyright Act to deny protection in a case where authorship is not an issue based solely on the fact that the copy deposited is a reconstruction rather than a "bona fide copy" of the original.  This being a question of first

CIVIL 02-1728 (HL)                         48

impression in this circuit and there being no prejudice to the co-defendants, I recommend that as to this issue, Sony & J & N's motion for summary judgment be DENIED.

   *2. Statute of Limitations:*

   For much the same reasons I recommended denial of EMI Latin and CDT Records' motions for summary judgment on the statute of limitations issue, I also recommend that Sony & J & N's motion be DENIED.  I add the following.

   With respect to the compositions "Noche de Fiesta" and "Bebo por Ti" in the album "Bailando y Gozando con … Gozadera," some confusion appears from the record.  Torres' allegations of copyright infringement refer to a second version of "Bailando y Gozando con … Gozadera" distributed by J & N.  The alleged infringement in this second version is distinct to the use of the compositions in the original publication of "Bailando y Gozando con … Gozadera."  It appears that co-defendants refer to Torres' knowledge of the original recording to also impute to him knowledge of the second version.  In any event, I find that the same rationale precluding judgment as a matter of law on the question of plaintiff's knowledge of "Merenhits '94," applies to Torres' knowledge of J & N's version of "Bailando y Gozando con … Gozadera."  It is for the finder of fact to determine the timing in which Torres' claims accrued, specifically whether or not he knew or should have known of their publication more than three years prior to the filing of the complaints.  I do not reach the merits of Torres' alternative argument that the statute of limitations was tolled by the doctrine of fraudulent concealment.

CIVIL 02-1728 (HL)                           49

### 3. Registration Requirement

Next is co-defendants' contention that Torres cannot recover for violation of his moral rights because he registered his compositions at the Puerto Rico Intellectual Property Registry in February of 2002, and that at that time, distribution of the phonorecords at issue had ceased. In Puerto Rico, registration is a requirement without which a moral rights violation claim cannot be maintained. All instances of infringement prior to registration are precluded. The only question before the court is whether there is a factual dispute regarding any instance of infringement after registration took place.

The co-defendants submit that Sony ceased distribution of "Merenhits '94" and "Que Siga el Party" prior to February 14, 2002 (Decl. of Eric Walzer, Docket No. 200, Ex. T, ¶ 19), that distribution by EMI Latin of "Merenhits '94" ceased in April of 1997 (Decl. of Andre Correale, Docket No. 182, Attach. 3, ¶ 10), and that distribution of "Bailando y Gozando con ... Gozadera" ceased in 1994 (Decl. of Marti Cuevas, Docket No. 200, Ex. S, at 3-4, ¶ 10). Torres in turn maintains, without submitting any evidence, that distribution and sale of "Merenhits '94" continued after he registered his compositions at the Puerto Rico Intellectual Property Registry. He makes no argument and presents no evidence regarding the other recordings. Therefore, I find that Torres has failed to meet his burden of demonstrating that there are material facts in dispute with respect to whether or not, the recordings at issue were distributed after February 14, 2002. His moral rights

CIVIL 02-1728 (HL)                    50

violation claims is precluded as a matter of law and consequently, co-defendants' motion for summary judgment should be GRANTED as to this issue.

*4. Remaining Arguments*

In view of my finding above that, as a matter of law, Torres cannot maintain a cause of action for moral rights violation, I find it unnecessary to address co-defendants' remaining contentions. My recommendation is that as to plaintiff's moral rights claim, that the same be DISMISS in its entirety, thus rendering moot the alternative arguments advanced by the co-defendants in support of their request for summary judgment.

V. CONCLUSION

In view of the above, it is my recommendation that Sony and J & N's motion for judgment on the pleadings be GRANTED in part and DENIED in part. It should be granted with respect to Torres' unjust enrichment claim inasmuch as said claim is preempted. It should also be granted as to Torres' request for statutory damages and attorney's fees and as to the moral rights claim pursuant to foreign law. It should be denied, however, with respect to their statute of limitations argument as my discussion of Sony and J & N's motion for summary judgment makes clear. On the other hand, I recommend that Torres' motion to exclude co-defendants' proposed expert be DENIED.

With respect to EMI Latin's motion for summary judgment, my recommendation is that the same be GRANTED in part and DENIED in part. It should be granted on plaintiffs' unjust enrichment claim because that claim is preempted. It is recommended

CIVIL 02-1728 (HL)                    51

that it be denied in regards to the contention that the copyright infringement claims are time-barred.

CDT Records' motion for summary judgment should also be GRANTED in part and DENIED in part. It should be granted with respect to the unjust enrichment claim (preemption), and the statutory damages and attorney's fees request, and the moral rights violation cause of action (registration requirements). It should be denied in regards to the statute of limitations and implied license issues.

Finally, it is my recommendation that Sony and J & N's motion for summary judgment be GRANTED in part and DENIED in part. The motion should be granted as to the moral rights violation claim due to Torres' failure to establish a trial-worthy dispute regarding distribution after registration, and denied with respect to the deposit requirement and statute of limitations issues.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v.

CIVIL 02-1728 (HL)                              52

Sec'y of Health & Human Serv., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702

F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982);

Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

　　　At San Juan, Puerto Rico, this 22nd day of November, 2004.


　　　　　　　　　　　　　　　　　　　S/ JUSTO ARENAS
　　　　　　　　　　　　　　　Chief United States Magistrate Judge